## Constitutional Amendments.

*Constitutional amendments—Timely and untimely submission—Construction of Armstrong v. King, Secretary of Commonwealth, 281 Pa. 207.*

The effect of the decision of the Supreme Court in Armstrong v. King, Secretary of the Commonwealth, is that if the proposed amendments to the Constitution, authorizing the issuance of forest, armory and State College bonds should pass the Legislature of 1925, they could and should be submitted to the people at the November election in that year, but that thereafter no further amendments can be submitted until at least five years have elapsed.

Department of Justice. Opinion to Hon. Clyde L. King, Secretary of the Commonwealth.

WOODRUFF, Att'y-Gen., July 11, 1924.—You have asked me concerning the bearing of the Supreme Court decision, handed down July 8, 1924, in the

Soldiers' Bonus Constitutional Amendment case, in which you were the defendant, on your duty to submit that amendment to the voters this fall, and on the question as to which will be the next year in which there may be "timely submissions" of constitutional amendments:

1. The decision is that an order must issue in due time from the Dauphin County Court, enjoining you from advertising the Soldiers' Bonus Amendment or placing it upon the ballots for the election of Nov. 4, 1924, as required specifically by section 2 of the resolution providing for the amendment.

2. As to the year when "timely submissions" of constitutional amendments to the voters will be next in order, we must turn to the first paragraph of the fifth page of the typewritten opinion of the Supreme Court, where this question is answered:

1. The Supreme Court calls attention to the fact that the Constitution of 1873 provides that "no amendment or amendments shall be submitted oftener than once in five years," and holds that there must be a lapse of at least five years between any "timely submission" of amendments and the next "timely submission."

2. The Supreme Court states that submissions of amendments have been made to the people in the years "1901, 1909, 1911, 1913, 1915, 1918, 1920 and 1923."

It also states that of these submissions "the untimely submissions were in 1911, 1913, 1918 and 1923."

3. The identification by the Supreme Court of the "untimely submissions," without mention of the submissions of 1901, 1909, 1915 and 1920, must be taken to mean that it considers the unmentioned submissions to be "timely submissions."

The "timely submission" of 1915 was preceded in less than five years by the submission of 1913, which latter the Supreme Court declares was an "untimely submission." Likewise, the "timely submission" of 1920 was preceded in less than five years by the "untimely submission" of 1918.

This being the case, there is only one conclusion to be drawn, namely, that the Supreme Court holds that "untimely submissions," like those of 1913 and 1918, do not in any way affect the timeliness of submissions, like those of 1915 and 1920, which would have been "timely submissions" if the "untimely submissions" had not been made.

4. If, as I believe, the Supreme Court have held the submissions of 1915 and 1920 to be "timely submissions," it follows irresistibly that any submission of a constitutional amendment in 1925 would be a "timely submission." In other words, the "untimely submission" of 1923 could not prevent a submission in 1925 from being a "timely submission." Otherwise the submissions of 1913 and 1918 would have prevented the submissions of 1915 and 1920 from being "timely submissions."

### Conclusion.

I cannot read the Supreme Court decision otherwise than to the effect that if the proposed amendments to the Constitution, authorizing the issuance of Forest, Armory and State College Bonds, should pass the 1925 legislature, they could and should be submitted to the people at the November election in 1925; but that, thereafter, no further amendments may be submitted until *at least* five years have elapsed.

From C. P. Addams, Harrisburg, Pa.